# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 13-CR-95-CVE |
| | ) |
| JEROME BENJAMIN WARTHEN, | ) |
| a/k/a Jerome Benjamin Warthan, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Suppress Evidence (Dkt. # 24). Defendant Jerome Benjamin Warthen argues that police unlawfully entered his house to perform a protective sweep and subsequently conducted a search of his house and backyard without obtaining valid consent from defendant. Dkt. # 24. The government responds that police believed that exigent circumstances were present that warranted immediate entry into defendant's home for a limited sweep to ensure the safety of police officers and others, and police obtained valid consent to search defendant's home. Dkt. # 29. Defendant has filed a reply (Dkt. # 32) in support of his motion and a copy of a police report is attached to his reply. See Dkt. # 32-1. On July 1, 2013, the Court held an evidentiary hearing on defendant's motion and heard the testimony of Tulsa Police Department (TPD) Sergeant Todd A. Taylor. The parties agree that the facts stated in their briefing are substantially undisputed and the purpose of Taylor's testimony was to supplement the record.

**I.**

On February 21, 2013 at approximately 9:00 a.m., a minor identified as L.A.[1] called 911 to report a domestic disturbance at 4976 North Hartford Avenue, Tulsa, Oklahoma. L.A. reported that Jerome Warthen "had fired off several rounds in the garage of the house and had slapped his mother in the face." Dkt. # 32-1, at1. L.A. also claimed that Warthen "was in a PCP rage and was tearing up the house."[2] Id. TPD Corporal Jack Pike, Sergeant Todd Taylor, Officer Tim Stendel, and other unidentified TPD officers arrived at the scene and parked about two blocks from Warthen's house. Police deployed from the south of Warthen's house and their guns were drawn. As police approached the house, they observed a black male exit the front door of the house and the person did not appear to be armed. Police ordered the person to come to their location and they placed the person in handcuffs for an "investigative detention." Taylor testified that he believed that the person was Warthen and that Warthen was not under arrest. Taylor and four other officers conducted a "security sweep" of the residence. The primary purpose of the sweep was to make sure that no injured persons were in the house, because the dispatcher had reported that shots had been fired and that Warthen had hit Atkins. Taylor did not request Warthen's consent before police entered the home. Taylor and four TPD officers conducted the sweep and Taylor entered a bedroom. Taylor noticed a closet door that was partially open and he testified that it was necessary to open the closet

---

[1] Defense counsel improperly used the minor's full name in his unsealed motion to suppress, Dkt. # 24, which was sealed shortly thereafter.

[2] Defendant has obtained a recording of the 911 call and L.A. later told the 911 operator that Warthen did not hit L.A.'s mother, Joy Atkins. Dkt. # 32, at 1. However, Taylor testified that the dispatcher advised responding police officers that it was a domestic disturbance with weapon call, and Taylor was not aware that L.A. subsequently stated that Warthen had not hit L.A.'s mother.

door to make sure that no injured persons were inside the closet. Taylor observed a box of Federal 9mm FMJ ammunition near the top of the closet, but he did not touch any items in the closet during the sweep. L.A. and his mother were not in the house and Taylor did not find any injured person during the sweep.

After the security sweep was completed, Taylor went onto the front porch and he directed other officers to bring Warthen inside the house. Taylor did not ask for Warthen's consent to either remain in or re-enter the house. Taylor questioned Warthen about the circumstances giving rise to the domestic disturbance call, and Warthen stated that he had an argument with his girlfriend, Atkins. He claimed that L.A. and Atkins walked out of the house before police arrived. Warthen stated that he had not been using PCP. Taylor asked Warthen if he kept a gun at the house or if anyone had been shooting a gun, and Warthen said "I ain't got no gun and I don't know why someone would say I did." Id. According to the police report, Taylor requested consent to search the "residence" and Warthen consented to the search. Dkt. # 32-1, at 1. Taylor and other officers searched the house and did not find a gun or any other evidence of criminal activity. TPD officers confirmed Warthen's identity and determined that he had an outstanding misdemeanor arrest warrant.

Taylor left the house by the front door and looked to the north of the house, and he observed footprints in the snow going to and coming from the backyard. The other officers present told Taylor that they had not entered the backyard. Taylor followed the footprints to a "broken down plastic dog kennel" and he lifted the dog kennel. Id. He observed a dry white plastic bag and he tore a hole in the bag. The bag contained a High Point 9mm pistol, a chunk of marijuana, and four individually wrapped baggies of marijuana. Taylor seized the items and returned to the house. He

3

examined the pistol and found that it was chamber-loaded with an additional round in the magazine. Taylor looked at the bottom of Warthen's shoes and the pattern on Warthen's shoes matched the footprints. Taylor also found fresh muddy shoe prints near the back door of the house. Taylor read Warthen his Miranda rights after the discovery of the firearm and drugs. Taylor testified that he did not request any additional consent or a clarification of the scope of consent before he entered the backyard.

**II.**

The government argues that TPD officers were permitted to conduct a protective sweep of defendant's house, because police were responding to a domestic disturbance call potentially involving a firearm and it was necessary to conduct a brief protective sweep for officer safety and the safety of others. Dkt. # 29, at 4-5. Defendant argues that he was not placed under arrest when he initially exited the house and the protective sweep doctrine is inapplicable. Dkt. # 24, at 3. He asserts that there were no facts known or observable to police, other than the information provided by the dispatcher, that would have suggested that there were any exigent circumstances, and police had no basis to believe that any other person was in the house or that the police were in danger. Id. at 4-5.

The government argues that police were authorized to conduct a protective sweep to ensure the safety of the police and others who might be present in the home. In Maryland v. Buie, 494 U.S. 325 (1990), the Supreme Court stated that:

> as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably

4

> prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

Id. at 334. The Tenth Circuit has been clear that a protective sweep "may take place only incident to an arrest." Armijo ex rel. Armijo Sanchez v. Peterson, 601 F.3d 1065, 1072 (10th Cir. 2010); United States v. Walker, 474 F.3d 1249, 1254 (10th Cir. 2007); United States v. Torres-Castro, 470 F.3d 992, 996 (10th Cir. 2006). The government states that defendant was subject to an "investigative detention" when police officers arrived, and Taylor testified that defendant was not arrested when he initially made contact with police. The Court finds that the protective sweep doctrine is inapplicable because defendant was not arrested before police entered his house.

Even though the initial entry into the home was not a protective sweep, the government argues that exigent circumstances existed and police lawfully entered defendant's home to prevent harm to themselves or others. To establish that exigent circumstances existed, the government has the burden to establish that "(1) the officers have an objectively reasonable basis to believe there is an imminent need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable . . . ." United States v. Najar, 451 F.3d 710, 718 (10th Cir. 2006). The Court must evaluate the facts "as they would have appeared to prudent, cautious, and trained officers," but the subjective beliefs of the officers are irrelevant. United States v. Martinez, 643 F.3d 1292, 1296 (10th Cir. 2011). Examples of circumstances that justify a warrantless entry into a home include the hot pursuit of a fleeing suspect, the imminent destruction of evidence, the need to prevent escape, or the risk of danger to police officers and other people inside the home. United States v. Thomas, 372 F.3d 1173, 1177 (10th Cir. 2004). There is no presumption that domestic disturbance calls involve a risk of harm to officers or third parties, and officers responding to domestic disturbance calls must have an objective basis to believe that a warrantless intrusion into

a home is necessary for the safety of officers or others. United States v. Davis, 290 F.3d 1239, 1244 (10th Cir. 2002).

The government claims that the 911 caller claimed that defendant had fired a gun and was hitting Atkins, and police had an objective basis to believe that Atkins and/or L.A. were in immediate danger. However, defendant came out of the house and made contact with police, and he was not threatening any police officer or refusing to comply with commands given by police. There was no reason for police to believe that defendant posed an immediate threat to the safety of police officers on the scene. Taylor testified that the primary purpose of the sweep was to look for injured persons in the house and, based on the information provided by the dispatcher, the Court finds that Taylor could reasonably have believed that an injured person could be in the house. The dispatcher stated that defendant was in a "PCP rage," that he had hit Atkins, and that shots had been fired. A reasonable police officer could have believed that an injured person could be in the house and that it was necessary to enter the house for the limited purpose of searching for an injured person. The government must also show that the manner and scope of the search was reasonable. The facts agreed to by the parties and as supplemented at the suppression hearing raise two substantial questions as to the reasonableness of the manner and scope of the intrusion into defendant's home. First, Taylor testified that a box of ammunition was found in a partially open bedroom closet and that the box was near the top of the closet. Taylor acknowledged at the suppression hearing that an injured person would likely have been located on the floor of the closet. An entry into a home under the exigent circumstances exception to the warrant requirement must be the "minimum intrusion necessary." United States v. Hendrix, 664 F.3d 1334, 1338 (10th Cir. 2011); United States v. Aquino, 836 F.2d 1268, 1272 (10th Cir. 1988). Opening a closet door and

searching in areas where an injured person could not have been located exceeded the limited purpose for which police entered defendant's home. In addition, it is not clear if police actually exited the house after the sweep was completed. Taylor testified that he stepped onto the front porch and directed other police officers to bring defendant into the house. Based on the testimony, it is not clear if Taylor's actions constitute a continuation of the sweep or a separate entry into defendant's home, but it is apparent that the investigative detention of defendant and the sweep of his home turned into a lengthy and warrantless occupation of defendant's house. There is no evidence that defendant consented to the police officers' presence in his home after the security sweep, and Taylor's testimony establishes that defendant was not asked to consent to a continued police presence in his house. Even if police had a legitimate basis to believe that exigent circumstances required an immediate search of defendant's house for injured persons, the scope of the search significantly exceeded the purpose for entering defendant's house. The government has offered no other exception to the warrant requirement that could apply under the circumstances. The Court finds that the scope of the sweep was a violation of defendant's constitutional rights.

      The government argues that defendant consented to a search of his home and the defendant's motion to suppress should be denied. The Fourth Amendment ordinarily prohibits the warrantless search of a person's home as per se unreasonable. Georgia v. Randolph, 547 U.S. 103, 106 (2006); Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Police face a higher burden when entering a person's home, because "[f]reedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." Payton v. New York, 445 U.S. 573, 587 (1980). Police can enter a person's home with consent, even if probable cause does not exist, provided that the consent is "freely and voluntarily" given. United States v. Cruz-Mendez, 467 F.3d

1260, 1265 (10th Cir. 2006). A court must review the totality of the circumstances to determine if consent was voluntary. United States v. Santurio, 29 F.3d 550, 552 (10th Cir. 1994). The Tenth Circuit has articulated a two-part test to determine if consent is voluntary:

> First, the government must proffer "clear and positive testimony that consent was unequivocal and specific and freely and intelligently given." Furthermore, the government must prove that this consent was given without implied or express duress or coercion.

United States v. Angulo-Fernandez, 53 F.3d 1177, 1180 (10th Cir. 1995). The mere fact that police approached defendant's home to initiate the encounter does not create an inference that defendant's consent was obtained through coercion. United States v. Spence, 397 F.3d 1280, 1283 (10th Cir. 2005). The Tenth Circuit has identified a list of non-exclusive factors that are often relevant to determine if consent was voluntary:

> the location of the encounter, particularly whether the defendant is "in an open public place where he [is] within the view of persons other than law enforcement officers;" whether the officers "touch or physically restrain" the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically "advised defendant at any time that he had the right to terminate the encounter or refuse consent."

United States v. Zapata, 997 F.2d 751, 756-57 (10th Cir. 1993) (internal citations omitted).

Defendant argues that his consent to search was tainted by a constitutional violation that occurred before his consent was requested. "When a consensual search is preceded by a Fourth Amendment violation, . . . the government must prove not only the voluntariness of the consent under the totality of the circumstances . . . but the government must also 'establish a break in the causal connection between the illegality and the evidence thereby obtained." United States v. Melendez-Garcia, 28 F.3d 1046, 1053 (10th Cir. 1994). This is a heavy burden and the Tenth

8

Circuit has identified three factors that are relevant to this inquiry: "(1) the temporal proximity between the police illegality and the consent to search; 2) the presence of intervening circumstances; and particularly 3) the purpose and flagrancy of the official misconduct." United States v. Fox, 600 F.3d 1253, 1257 (10th Cir. 2010).

The government has not met its burden to show that the taint of a preceding constitutional violation was sufficiently attenuated to break the connection between the illegality and defendant's consent to search. Taylor testified that defendant was brought into the house as soon as the security sweep was completed, and he was placed on a couch in the living room after the couch and nearby areas had been searched for weapons. There was little or no break between the initial constitutional violation and Taylor's request for defendant's consent to search the house. Although not discussed by the parties, there was also an intervening constitutional violation that added to the illegality of the entry into defendant's home. After Taylor directed other officers to bring defendant into the home, he did not give defendant a Miranda[3] warning and he immediately began to question defendant about the presence of a firearm in the home. Taylor also asked defendant if he had been using PCP. These questions would tend to encourage an incriminating response and defendant should have been given a Miranda warning before the interrogation began. Defendant's consent was obtained as part of the illegal interrogation, and this suggests that the taint from the initial constitutional violation had not dissipated. Taylor also did not ask defendant to sign a consent form. See United States v. Delancy, 502 F.3d 1297, 1311 (11th Cir. 2007) (defendant signed consent form advising her of her constitutional rights and this was an intervening circumstance suggesting a break between the constitutional violation and the consent to search). As to the flagrancy of the

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

misconduct, the record does not suggest that TPD officers intentionally violated defendant's constitutional rights.[4] However, there is also no indication that the police officers took any steps to ensure that defendant's constitutional rights were protected and there were multiple constitutional violations that preceded defendant's consent. Considering the three Fox factors, there is no basis for the Court to find that the taint from the original constitutional violation(s) had been purged when defendant consented to the search, and defendant's consent to a search of his house was invalid.

Defendant also argues that Taylor exceed the scope of defendant's consent, even if valid, because defendant consented only to a search of the residence and he did not consent to a search of the backyard. According to the police report, defendant told Taylor to "search all you want, I ain't got no gun." Dkt. # 32-1 at 1. This statement was made in response to Taylor's request to search the "residence." It is not clear that defendant would reasonably have understood "residence" to include the backyard. The Court must consider defendant's consent under an objective standard and ask "[w]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" United States v. Kimona, 383 F.3d 1215, 1223 (10th Cir. 2004). Under the totality of the circumstances, it is also relevant that TPD officers conducted a search of defendant's home and did not find a gun, and the police report suggests that Taylor viewed the

---

[4] The information provided by the dispatcher alerted police officers to the possibility that they could be encountering a volatile and armed individual engaged in a violent domestic disturbance, and it was reasonable for police to take precautions for the safety of themselves and others. The Court finds that Taylor's testimony was credible and Taylor had a reasonable basis to believe that it was necessary to conduct a limited sweep of the house to ensure that no injured persons were inside. There is nothing in the record that suggests police acted in bad faith or intentionally violated defendant's constitutional rights, but this does not excuse the constitutional violations that occurred when police exceeded the scope of the limited entry authorized under the exigent circumstances exception to the warrant requirement.

search to be complete before went into the backyard. Dkt. # 32-1, at 1. This would tend to show that a reasonable police officer would have interpreted defendant's consent as limited to a search of the inside of the house. The record before the Court does not show that a reasonable person would have understood that he was consenting to a search of the backyard.

The Court finds that defendant's motion to suppress should be granted. The remedy for a Fourth Amendment violation is the exclusion of any "evidence obtained as a result of an illegal search and seizure . . . ." <u>United States v. Harris</u>, 313 F.3d 1228, 1233 (10th Cir. 2002). In this case, defendant's constitutional rights were violated by the scope of the police officers' protective sweep upon initial entry. His subsequent consent to a search of his home was tainted by this constitutional violation and the search of the backyard exceeded the "consent." All evidence seized as a result of the illegal entry into defendant's home and backyard should be suppressed.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence (Dkt. # 24) is **granted**.

**DATED** this 3rd day of July, 2013.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE